# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIFFANIE SNIDER, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 1:19-cv-07386 ) |
| v. | ) Hon. Steven C. Seeger ) |
| HEARTLAND BEEF, INC., an Indiana corporation, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Defendant Heartland Beef, Inc.'s Motion to Transfer (Dckt. No. 19) is granted in part and denied in part. No party is from the Northern District of Illinois. None of the acts and omissions that gave rise to the claims took place in the Northern District, either. This case has no nexus to this District, so it simply doesn't belong here.

Plaintiff Tiffanie Snider lives in downstate Illinois in McDonough County, which is within the boundaries of the Central District. *See* Cplt. at ¶ 8 (Dckt. No. 1-1). She worked at an Arby's restaurant operated by Defendant Heartland Beef in Macomb, Illinois. *Id.* at ¶¶ 1, 28. Measured in driving distance, Macomb is closer to St. Louis (162 miles) and Des Moines (214 miles) than Chicago (246 miles). *See Moore v. Magiera Diesel Injection Servs., Inc.*, 2019 WL 2502029, at *3 (N.D. Ill. 2019) ("The court takes judicial notice under Evidence Rule 201(b) of the following facts drawn from Google Maps."). By way of comparison, Washington D.C. is closer to New York City (225 miles) than Macomb is to Chicago.

The case is about the use of biometric information at that downstate Arby's, plus six other restaurants scattered across Illinois. *See* Cplt. at ¶¶ 1, 9. The complaint alleges that Heartland Beef requires its employees to scan their fingerprints into an employee database. *See* Cplt. at ¶ 3. Heartland Beef allegedly "uses a biometric time-tracking system that requires employees to use fingerprint scans as a means of authentication each time they start or stop working." *Id.* Employees have to submit to a fingerprint scan when they use a register, too. *Id.* at ¶¶ 4–5. So every time Snider clocked in or out of work, or used the register, she had to submit to a biometric scan. *Id.* at ¶¶ 20–21, 29, 41.

Snider claims that Heartland Beef's scanning and retention of employees' fingerprints violates the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/10. She brings claims on behalf of herself and a putative class of "[a]ll citizens of Illinois who have had their fingerprints collected, captured, received, or otherwise obtained by Heartland Beef in Illinois." *Id.* at ¶ 34; *see also id.* at ¶¶ 39–46.

The complaint lacks any connection to the Northern District of Illinois. Snider lives in or near Macomb, Illinois, and Heartland Beef is based in Bloomington, Indiana. *See* Cplt. at ¶¶ 8–9. So, this dispute is between a resident of the Central District of Illinois and a resident of the Southern District of Indiana. The conduct in question did not take place here, either. Snider worked at only one restaurant (Cplt. at ¶ 28), and it is located in Macomb, Illinois. The complaint has no link – not a party, not an act, not an omission, not anything – to this judicial district. The only exception is the address of Plaintiff's counsel.

Snider filed this lawsuit in downtown Chicago, hundreds of miles from home. She sued in the Circuit Court of Cook County, and Heartland Beef removed it to federal court. *See* Dckt. No. 1. Heartland Beef later filed a motion to transfer this case to the Southern District of Indiana

under 28 U.S.C. § 1404(a). *See* Dckt. No. 19. Heartland Beef supported its motion with a declaration from its Vice President of Human Resources. *See* Declaration of Jennifer Flynn (Dckt. No. 19-1).

Heartland Beef operates 37 restaurants across the Midwest, including seven in Illinois.[1] *Id.* at ¶ 2; *see also* Cplt. at ¶ 1 (Dckt. No. 1-1). All of the corporate decision-making takes place in Indiana. *See* Declaration of Jennifer Flynn, at ¶ 2 (Dckt. No. 19-1). "All of Heartland's corporate-wide functions, including finance, marketing, legal, and human resources, are carried out of Heartland's Bloomington headquarters." *Id.* at ¶ 4. All of Heartland Beef's officers and senior management work at the Bloomington headquarters, and that's where they made the key decisions about the use of the technology in question. *Id.* at ¶¶ 5–6. The records are located in Bloomington, too. *Id.* at ¶ 4.

Litigation doesn't belong in an inconvenient location, at least when it can be avoided. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404(a). The decision ultimately rests on the "discretion of the court." *See* 28 U.S.C. § 1404(b). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to [a] ' . . . case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

---

[1] It is not mentioned in the complaint, but apparently one (but only one) of the seven restaurants is in Rock Falls, Illinois, which falls within this District. *See* Dckt. No. 22, at 3-4. But Plaintiff never worked there, and that restaurant is on the other side of the State, about 40 miles from the Mississippi River. And Rock Falls is in the Western Division of the Northern District of Illinois. So, even in a class action, that solitary restaurant isn't much of a reason to litigate this case by Lake Michigan.

3

The text of the statute "guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." *See Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *see also Hirst v. SkyWest, Inc.*, 405 F. Supp. 3d 771, 775 (N.D. Ill. 2019). The analysis is "flexible and individualized," not "narrow or rigid." *Research Automation*, 626 F.3d at 978 (citing *Stewart*, 487 U.S. at 29). Practical considerations carry the day.

A district court has discretion to transfer a case under § 1404(a) when "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1147 (N.D. Ill. 2019); *Hanover Ins. Co. v. N. Bldg. Co.*, 891 F. Supp. 2d 1019, 1025 (N.D. Ill. 2012). Here, venue is proper in the Northern District of Illinois because Defendant removed this case from the Circuit Court of Cook County. *See* 28 U.S.C. §§ 1441(a), 1446(a). Venue would be proper in the Central District of Illinois because a substantial part of the events or omissions took place there. *See* 28 U.S.C. § 1391(b)(2). Venue also would be proper in the Southern District of Indiana because Heartland Beef resides there. *See* 28 U.S.C. § 1391(b)(1).

When considering convenience, courts consider factors such as where the witnesses and evidence are located, where the events took place, and how hard it would be for each side (in relative terms) to travel to one location or the other. *See Research Automation*, 626 F.3d at 978. When considering the interests of justice, courts weigh docket congestion, each court's relative familiarity with relevant law, and the relationship of each community to the controversy, among

other potential factors. *Id.* Courts consider both private and public interests. *See Berkshire Inv., LLC v. Aircraft Hinge, Inc.*, 2015 WL 556348, at *1 (N.D. Ill. 2015).

Snider wants her case to stay in the Northern District of Illinois. *See* Dckt. No. 22. Heartland Beef wants to litigate on its home turf in the Southern District of Indiana. *See* Dckt. No. 19. After taking all of the facts into account, this Court concludes that this case belongs in the Central District of Illinois.

Litigating this case in the Central District of Illinois will be more convenient than litigating in Indiana, let alone the Northern District of Illinois. At its core, this case is about the collection and use of biometric data at an Arby's in Macomb and six other Illinois locations. *See* Cplt. ¶ 1. Snider lives in the Central District, and all of the events in question took place in that District. She clocked in and out of work in the Central District, and she used cash registers in the Central District. *See Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F. Supp. 2d 941, 947 (N.D. Ill. 2002) (finding that transfer to the Northern District of Texas was appropriate based on multiple factors, including the fact that many of the material events took place in Texas); *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998) ("[T]he fact that New Jersey was the situs of all material events related to the underlying cause of action weighs in favor of transfer to New Jersey."). By all appearances, her job at Arby's didn't require Snider to set foot in Indiana.

Presumably, many of Plaintiff's witnesses will be located in Illinois. Snider likely will call as witnesses other employees – say, managers on duty, or other cashiers – to testify about the policies and practices at the neighborhood Arby's. As Heartland Beef points out (Dckt. No. 25, at 6), Snider failed to identify any local witnesses. Even so, it is difficult to imagine Snider advancing her case without calling the boots on the ground in the Illinois restaurant.

True, Heartland Beef's senior management is located in Indiana. But Heartland Beef identified only two Indiana witnesses. *See* Dckt. No. 19-1, at ¶ 7. That's a small number. And even then, they work for a party, so any minimal inconvenience is entitled to little weight. The "convenience of non-party witnesses is afforded greater weight than the convenience of parties." *Hirst*, 405 F. Supp. 3d at 778; *Belcastro v. United Airlines, Inc.*, 2018 WL 1875537, at *4 (N.D. Ill. 2018); *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 858 (N.D. Ill. 2007). Those two witnesses will be deposed in Indiana, too, so the inconvenience would be limited to trial. *See* Fed. R. Civ. P. 30(a)(1), 45(c)(1)(A).

Plaintiff argues that the Northern District is her preferred forum, but her preference doesn't count for much. For whatever reason, Snider decided not to sue in her own backyard. Instead, Snider chose to bring this case hundreds of miles away, in a location where she doesn't live and where nothing took place. A decision to sue in an unrelated location isn't entitled to much deference. *See RAH Color Techs. LLC v. Adobe Sys.*, 2018 WL 2393875, at *1–2 (N.D. Ill. 2018); *Body Science LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012) ("In general, a plaintiff's choice of forum is given considerable deference. . . . That deference is lessened, however, where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation."). In any event, a plaintiff's choice of forum is entitled to less weight when representing a class. *See Budicak, Inc. v. Lansing Trade Group, LLC*, 2019 WL 3554165, at *3 (N.D. Ill. 2019).

Snider argues in favor of staying in the Northern District of Illinois, claiming that it is more convenient than Indiana because she "does not have a car." *See* Dckt. No. 22, at 5. If she doesn't have a car, then she should litigate close to home. And the nearest federal courthouse in the Central District is in Rock Island, only 80 miles away from her hometown. *See* Dckt. No.

6

22-1, at ¶ 8. Chicago is three times farther. Plaintiff offers to take an "easy train ride" on Amtrak to Chicago. *See* Dckt. No. 22, at 6. But the fact that Plaintiff would have to hop on an Amtrak to litigate in this District speaks volumes.

Heartland Beef would not suffer any significant hardship by litigating in Illinois. And in relative terms, it would be a greater hardship for Snider to litigate in Indiana than it would be for Heartland Beef to litigate in Illinois. Surely Heartland Beef has more resources to devote to out-of-state litigation than Snider, a former cashier at Arby's. *See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Lewis*, 2012 WL 3134313, at *5 (N.D. Ill. 2012) ("[T]he court has little doubt that Central States has greater resources than defendants to litigate this case, a factor that weighs in favor of defendants."). There is nothing unfair about requiring Heartland Beef to defend itself in Illinois, either. After all, Heartland Beef made the business decision to open up shop in the Central District.

Litigating this case in the Central District of Illinois will advance the interests of justice, too. An Illinois community would have a greater connection to this dispute than an Indiana community. There is little reason why the good people of the State of Indiana should sit on a jury to hear a case about an Illinois plaintiff alleging violations of Illinois law at an Illinois restaurant. Potential jurors in Indiana could be forgiven for wondering why their neighbors in Illinois weren't asked to serve on the jury instead.

The Central District of Illinois would apply home-state law, too. All else being equal, a federal court in Illinois has more "relative familiarity" with Illinois law than a federal court in Indiana. *See Research Automation*, 626 F.3d at 978; *see also Budicak*, 2019 WL 3554165, at *4 ("Expertise with relevant law might be a modestly important factor for cases in which federal courts sit in diversity and are tasked with applying state law; the district court that regularly

7

interprets that particular state law could hold an advantage."). The Southern District of Indiana has had zero cases under the Illinois statute in question. *See* Dckt. No. 22-1, at ¶ 6.

The relative congestion of the courts does not help either side. The median time from filing to trial (civil only) is 38.2 months in the Central District of Illinois, and 36.0 months in the Southern District of Indiana. *See* United States Courts, Federal Court Management Statistics, September 2019, *United States Courts – National Judicial Caseload Profile* (2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf. The Northern District of Illinois is in the middle at 36.7 months. *Id*. So, the numbers are roughly the same.

The Central District of Illinois, as it turns out, is each side's Plan B. Heartland Beef argues that the Central District is better than the Northern District of Illinois, and Snider argues that the Central District is better than the Southern District of Indiana. *See* Dckt. No. 25, at 11; Dckt. No. 22, at 10. The Court does not select the Central District for that reason. Still, each side acknowledges that the Central District is a better option than the other side's preferred forum.

Because this case belongs elsewhere, this Court does not reach the merits of Heartland Beef's motion to dismiss for failure to state a claim. *See* Dckt. No. 17. That decision rests with the transferee Court.

The Motion to Transfer is hereby granted in part and denied in part. This case is hereby transferred to the Central District of Illinois under 28 U.S.C. § 1404(a).

Date:   January 29, 2020

_____
Steven C. Seeger
United States District Judge